IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN RAGO,<br>　　　　　Plaintiff,<br><br>　　　v.<br><br>TRIFECTA TECHNOLOGIES, INC., *et al.*,<br>　　　　　Defendants. | :<br>:<br>:<br>:　Civil No. 5:22-cv-01482-JMG<br>:<br>:<br>: |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                             **July 25, 2022**

Plaintiff John Rago filed this action against his former employer, Defendant Trifecta Technologies, Inc. ("Trifecta"), and Trifecta's Chief Executive Officer, Defendant Douglas Pelletier. Rago alleges that Defendants' non-payment of wages amounts to a breach of his employment agreement with Trifecta. In response, Defendants claim that Rago committed breach of contract by disparaging and competing with Trifecta after his termination. Before the Court is Rago's motion to dismiss Defendants' counterclaims. For the reasons that follow, the Court grants the motion in part and denies it in part.

**I.      BACKGROUND**[1]

On July 3, 2020, Trifecta and Rago executed an employment agreement (the "Employment Agreement"). (Answer ¶ 8, ECF No. 5; Compl. Ex. A, at 1–2, ECF No. 1.) Three days later, the parties entered into a non-competition agreement (the "Non-Competition Agreement"). (Countercl. ¶ 5, ECF No. 5; Answer Ex. A, at 1, ECF No. 5-1.) The Non-Competition Agreement contained several restrictive covenants. For example, it restricted Rago from distributing

---

[1]      The factual allegations contained in the counterclaim are presumed to be true and are construed in the light most favorable to Defendants.

Trifecta's confidential information, including, but not limited to, "trade secrets, customer lists, customer representative, employee and prospective employee information, proprietary software products, pricing information, and any other financial information pertaining to" Trifecta's business. (Answer Ex. A, at 1.)

Rago served as Trifecta's Senior Vice President and Chief Operating Officer for about a year and a half. (Answer ¶¶ 7, 27; Compl. ¶¶ 7, 27.) During that time, Rago and Trifecta also entered a loan agreement (the "Loan Agreement"). (Countercl. ¶ 10; Answer Ex. B, at 1, ECF No. 5-1.) Under that agreement, which was executed on May 19, 2021, Trifecta loaned $25,000 to Rago "for personal reasons." (Answer Ex. B, at 1.)

Trifecta ultimately terminated Rago on January 31, 2022. (Answer ¶ 27; Compl. ¶ 27.) Trifecta alleges that, upon Rago's termination, the parties entered yet another contract (the "Loan Forgiveness Agreement"). In exchange for forgiveness of the Loan Agreement, Rago allegedly promised "to not engage in any contact with Trifecta employees, clients[,] . . . and vendors," and "to refrain from any disparaging conduct with regards to Trifecta." (Countercl. ¶ 11.)

Trifecta alleges that Rago breached both the Non-Competition Agreement and the Loan Forgiveness Agreement. As to the former, Trifecta alleges, *inter alia*, that Rago "permitted a non-Trifecta employee of a competitive company [to] have access to his Trifecta domain user id and password providing access to Trifecta's systems." (*Id.* ¶ 12(a).) As to the latter, Trifecta alleges, *inter alia*, that Rago "[a]ttempt[ed] to induce employees of Trifecta to leave the [c]ompany" and that he "has engaged in a pattern of consistent disparagement of Trifecta." (*Id.* ¶ 20.)[2]

On July 5, 2022, Rago moved to dismiss Defendants' counterclaims. (Pl.'s Mot., ECF No.

---

[2] Trifecta's pleading contains an apparent typo. What should be listed as paragraph 20 is instead listed as paragraph 4. To avoid confusion, the Court cites Trifecta's allegations as if they were properly numbered.

7.) Defendants have since submitted a response in opposition. (Defs.' Opp'n, ECF No. 8.) The motion is now ripe for disposition.

**II.     STANDARD**

"Courts evaluate a motion to dismiss a counterclaim under the same standard as a motion to dismiss a complaint." *Mr. Sandless Franchise, LLC v. Karen Cesaroni LLC*, 498 F. Supp. 3d 725, 732 (E.D. Pa. 2020) (citing *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011)). A counterclaim may be dismissed for failing to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive the motion, the counterclaim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a [party] has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Third Circuit courts use a three-step framework to evaluate the sufficiency of a counterclaim. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, we note the elements necessary to state a claim. *Connelly*, 809 F.3d at 787. We then "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, we assume the veracity of well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

3

### III.  DISCUSSION

Defendants bring two breach of contract counterclaims. To state a claim for breach of contract under Pennsylvania law,[3] Defendants must establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Stein v. Matheson*, 539 F. Supp. 3d 463, 472 (E.D. Pa. 2021) (quoting *Gorski v. Smith*, 812 A.2d 683, 692 (Pa. Super. Ct. 2002)).

The Court discusses the Non-Competition Agreement before turning to the Loan Forgiveness Agreement.

#### A.   Non-Competition Agreement

Defendants' first counterclaim centers on the Non-Competition Agreement. In support of dismissal, Rago argues that Trifecta: (1) has not plausibly alleged that the restrictive covenants contained in that agreement are "ancillary to the sale of the good will of a business or to a contract of employment"; (2) has "failed to allege facts regarding specific consideration . . . sufficient to make such restrictive covenants enforceable"; and (3) has "failed to adequately plead facts to support a breach." (Pl.'s Mem. 7–8, ECF No. 7-2.)

As to the first argument, Rago correctly asserts that, in the employment context, restrictive covenants must be "ancillary to an employment relationship." *Ricoh USA, Inc. v. Bailon*, 419 F. Supp. 3d 871, 875 n.5 (E.D. Pa. 2019) (citing *Socko v. Mid-Atl. Sys. of CPA, Inc.*, 126 A.3d 1266, 1274 (Pa. 2015)). But that principle does not warrant dismissal here. Upon review of the relevant contracts,[4] it is clear that the restrictive covenants contained within the Non-Competition

---

[3]  Both parties have only cited to Pennsylvania law in their memoranda.

[4]  "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

Agreement directly relate to Rago's employment with Trifecta.  The language contained within the Non-Competition Agreement confirms as much.  (*See* Answer Ex. A, at 1 (acknowledging that Rago is entering restrictive covenants "in connection with the performance of his services on behalf of" Trifecta).)  The Employment Agreement further specifies that assent to the restrictive covenants is a prerequisite to employment with Trifecta.  (*See* Compl. Ex. A, at 2 ("Because of the sensitive nature of the company's business, all applicants are also required to sign a Non-Competition Agreement and complete a background and credit check.").)  Given this express language, the Court rejects Rago's first argument for dismissal.

As to the second argument, Rago correctly asserts that restrictive covenants "must be supported by adequate consideration."[5]  *Socko v. Mid-Atl. Sys. of CPA, Inc.*, 99 A.3d 928, 933 (Pa. Super. Ct. 2014) (citation omitted).  The consideration inquiry turns in large part on "whether the covenant is entered into prior to, during, or after employment ends."  *Ricoh*, 419 F. Supp. 3d at 876 (internal quotation marks and citation omitted).  Post-employment covenants are only enforceable if "the employee receives new and valuable consideration—that is, some corresponding benefit or favorable change in employment status."  *Id.* (internal quotation marks and citation omitted).  On the other hand, "adequate consideration exists for an agreement attendant to an employment relationship where the agreement was entered into at the inception of the relationship."  *Lomax v. Vivint Solar Dev., LLC*, No. 20-cv-1774-JMY, 2020 WL 6781939, at *5

---

This principle extends to exhibits attached to a counterclaim.  *See, e.g.*, *New Skies Satellites, B.V. v. Home2US Commc'ns, Inc.*, 9 F. Supp. 3d 459, 465 (D.N.J. 2014).  As a result, this Court may properly consider the Employment Agreement, the Non-Competition Agreement, and the Loan Agreement, all of which were attached either to Rago's complaint or Defendants' counterclaim.

5  "The adequacy of consideration to support a restrictive covenant is an issue of law."  *Allied Orthopedic Assocs., Inc. v. Leonetti*, No. 18-01566, 2018 WL 4051801, at *6 (E.D. Pa. Aug. 24, 2018).

(E.D. Pa. Nov. 18, 2020) (citation omitted).

To that end, "a written covenant not to compete can follow employment if the initial employment started with the understanding that the covenant was part of the deal." 3 MELVIN F. JAGER, TRADE SECRETS LAW § 56:7 (2022) (collecting Pennsylvania cases). In *Nextgen Healthcare Information Systems, Inc. v. Messier*, for example, an employee accepted a position while on "notice that he would be required to execute non-compete, non-solicitation and confidentiality restrictions as a condition of his employment." No. 05-cv-5230, 2005 WL 3021095, at *11 (E.D. Pa. Nov. 10, 2005). "Given that [the employee] received this notice" *before* accepting employment, his assent to restrictive covenants mere days *after* starting employment "rendered the covenants . . . ancillary to his employment, and thus supported by adequate consideration, as a matter of Pennsylvania law." *Id.*; *see also Nat'l Bus. Servs., Inc. v. Wright*, 2 F. Supp. 2d 701, 707–08 (E.D. Pa. 1998) ("Because the restrictive covenants were part of the formation of the employment relationship, they are supported by adequate consideration as a matter of law."); *cf. Pulse Techs., Inc. v. Notaro*, 67 A.3d 778, 786–87 (Pa. 2013) (finding that a restrictive covenant "was incident to [the employee] taking employment").

Defendants' allegations pay lip service to consideration. (*See* Countercl. ¶ 14 ("Mr. Rago and Trifecta entered into a valid Employee Non-Competition Agreement for good and valid consideration.").) But in determining whether Defendants have sufficiently alleged consideration, the Court's review also encompasses the Employment Agreement and Non-Competition Agreement themselves. *See, e.g.*, *Bell v. Able & Sullivan, LLC*, No. 16-1851, 2016 WL 4771857, at *4 (E.D. Pa. Sept. 13, 2016) (reviewing contracts attached to pleading to conclude that party adequately alleged consideration). The Employment Agreement conditions Rago's employment on assent to the Non-Competition Agreement. (*See* Compl. Ex. A, at 2 ("Because of the sensitive

6

nature of the company's business, all applicants are also required to sign a Non-Competition Agreement and complete a background and credit check.").)  The Non-Competition Agreement further memorializes "that a restrictive covenant was discussed at the time of preliminary employment negotiations with [Trifecta] and that [Rago] acknowledged a willingness to enter into a contract containing such a restrictive covenant."  (*See* Answer Ex. A, at 2.)

Therefore, even though Rago executed the Non-Competition Agreement *after* the Employment Agreement, the restrictive covenants contained therein do not reflect "a later attempt to impose additional restrictions on an unsuspecting employee."  *Pulse Techs.*, 67 A.3d at 785 (quoting *Modern Laundry & Dry Cleaning Co. v. Farrer*, 536 A.2d 409, 411 (Pa. Super. Ct. 1988)).  This case instead resembles *Nextgen Healthcare*.  Like the employee in that case, Rago was on "notice that he would be required to execute non-compete, non-solicitation and confidentiality restrictions as a condition of his employment."  No. 05-cv-5230, 2005 WL 3021095, at *11.  Both the Employment Agreement and the Non-Competition Agreement indicate as much.  (*See* Compl. Ex. A, at 2; Answer Ex. A, at 2.)  For that reason, Defendants have adequately alleged consideration and the Court rejects Rago's second argument for dismissal.

Rago's final argument for dismissal centers on breach.  Rago correctly identifies that many of Defendants' allegations of breach lack the requisite factual support.  For example, Defendants plead in conclusory fashion that Rago "[e]ngaged in prohibited conduct with regards to Trifecta's clients." (Countercl. ¶ 15(c).)  At the same time, though, Defendants allege that "[a] forensic check of Mr. Rago's company laptop . . . revealed that prior to his termination, Mr. Rago permitted a non-Trifecta employee of a competitive company [to] have access to his Trifecta domain user id and password providing access to Trifecta's systems and Confidential Information." (*Id.* ¶ 12(a).)  This factual allegation, which this Court must accept as true, states a plausible claim for breach of

contract. Indeed, under the terms of the Non-Competition Agreement, Rago promised not to disclose Trifecta's confidential information. (Answer Ex. A, at 1.) By allegedly disclosing such confidential information to a competitor, Rago violated the Non-Competition Agreement. The Court therefore rejects Rago's final argument for dismissal.

### B. Loan Forgiveness Agreement

Defendants' second counterclaim centers on the Loan Forgiveness Agreement. In support of dismissal, Rago argues that Trifecta: (1) has "failed to allege sufficient facts to support" the existence of the Loan Forgiveness Agreement; and (2) has failed "to allege any facts to support a breach of the purported agreement." (Pl.'s Mem. 9.)

The Court focuses on the second argument, as it is dispositive.[6] Defendants claim that

---

[6] That said, the Court potentially sees merit in Rago's first argument, too. Attached to Rago's motion is a text message exchange that "suggests that there was never a meeting of the minds" concerning the Loan Forgiveness Agreement. (Pl.'s Mem. 9; *see* Pl.'s Mem. Ex. A, at 1, ECF No. 7-3.)

"[A] court may consider an undisputedly authentic document that a [party] attaches as an exhibit to a motion to dismiss if the [non-moving party's] claims are based on the document." *Pension Benefit*, 998 F.2d at 1196 (citations omitted); *see, e.g.*, *New Hampshire Ins. Co. v. Dielectric Commc'ns, Inc.*, 872 F. Supp. 2d 458, 461 (E.D. Pa. 2012) (in breach of contract suit, considering contract attached to a motion to dismiss).

Defendants do not dispute the authenticity of the text messages. And, at first blush, it appears that Defendants "relied upon these documents in framing" their counterclaim. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotation marks and citation omitted). After all, the terms of the Loan Forgiveness Agreement (as alleged in the counterclaim) directly mirror the terms recited in the text messages. According to the counterclaim, Rago agreed "to not engage in any contact with Trifecta employees, clients, Salesforce as well as Trifecta's other clients and vendors and to refrain from any disparaging conduct with regards to Trifecta." (Countercl. ¶ 11.) According to the text messages, Rago was to refrain from "contact with [Trifecta's] employees, clients, . . . Salesforce and [Trifecta's] other vendors and partners." (Pl.'s Mem. Ex. A, at 1.) This direct overlap at least suggests that the Court may properly consider the text message exchange at the motion to dismiss stage. *See, e.g.*, *Fagan v. Fischer*, No. 14-7013, 2015 WL 4321989, at *3 (D.N.J. July 14, 2015) (properly considering extrinsic document where "some of the factual allegations flowed from the document").

Rago breached the Loan Forgiveness Agreement by "[a]ttempting to induce employees of Trifecta to leave the Company" and "engag[ing] in a pattern of consistent disparagement of Trifecta." (Countercl. ¶ 20.) These blanket allegations are conclusory and lack any factual support. Defendants do not plead any facts detailing Rago's solicitation of Trifecta employees. Nor do they plead any facts suggesting that Rago has disparaged Trifecta.

As it currently stands, these allegations do not give rise to a cognizable claim for breach of contract. The Court therefore dismisses this counterclaim. This dismissal is with leave to amend, as it is conceivable that Defendants can cure the pleading deficiencies identified herein.

## IV. CONCLUSION

For the reasons set forth above, Rago's motion is granted in part and denied in part. Defendants' counterclaim for breach of the Loan Forgiveness Agreement is dismissed without prejudice. An appropriate order follows.

BY THE COURT:

 /s/ John M. Gallagher
JOHN M. GALLAGHER
United States District Court Judge

---

Ultimately, because Rago's second argument carries the day, the Court need not decide whether the text messages fall within the appropriate scope of review. But all this is to say that Defendants' second counterclaim would benefit from additional factual support. For example, Defendants' allegations do not specify when exactly the parties entered into the Loan Forgiveness Agreement, nor do Defendants specify whether the Loan Forgiveness Agreement was an oral contract or a written contract.